Sealed

Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
FILED

*July 12, 2022*

Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **Criminal No.** **4:22-cr-332** |
| **v.** | § | |
| | § | |
| **PATRICK OSEMWENGIE** | § | **FILED UNDER SEAL** |
| **Defendant.** | § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

### Medicare

1.      Medicare and Medicaid were federal "health care benefit programs" as defined by Title 18, United States Code, Section 24(b). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries" and those receiving benefits under Medicaid were referred to as "recipients." Medicare beneficiaries are assigned a Health Insurance Claim Number (HICN) which serves as a Medicare beneficiary's identification number for claims processing.

### Entities and Individuals Involved

2.      Ebra Health Care Services Inc ("Ebra") was a Texas corporation doing business in Houston, Texas.  J.A. was the effective owner of Ebra.

3.      Grace Healthcare Services Inc. ("Grace") was a Texas corporation doing business in Houston, Texas. A.O. was the effective owner of Grace.

4.      Heal Rite Wellness Community Mental Health Care Centre, LLC ("Heal Rite") was a Texas corporation doing business in Houston, Texas. Patrick Osemwengie was a director and point of contact for Heal Rite.

5.      Quick Healing Community Mental Health Center, LLC ("Quick Healing") was a Texas corporation doing business in Houston, Texas. Patrick Osemwengie was a director and point of contact for Quick Healing.

6.      Total Healing Community Health Center, LLC ("Total Healing") was a Texas corporation doing business in Houston, Texas. Patrick Osemwengie was a director and point of contact for Total Healing.

## COUNT 1

### Conspiracy to Defraud the United States and to
### Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

7.      Paragraphs 1 through 6 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

8.      From in and around September 1, 2015 through in or around October 16, 2017, the exact dates being unknown, in the Houston Division of the Southern District of Texas, and elsewhere, the Defendant,

### PATRICK OSEMWENGIE

did knowingly and willfully combine, conspire, confederate and agree with coconspirators J.A, A.O, and other coconspirators, known and unknown, to commit certain offenses against the United States, that is,

        a.      to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the

2

United States Department of Health and Human Services in its administration and oversight of the Medicare program; and to commit certain offenses against the United States, that is:

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

c.      to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

9.      It was a purpose of the conspiracy for the Defendant **PATRICK OSEMWENGIE**, and his coconspirators to unlawfully enrich themselves paying and receiving

kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom the owners and operators of Ebra and Grace would then submit home health care claims to Medicare.

## **Manner and Means of the Conspiracy**

The manner and means by which the Defendant **PATRICK OSEMWENGIE** and his coconspirators sought to accomplish the purpose and objects of the conspiracy included, among other things, the following:

10.     Defendant **PATRICK OSEMWENGIE** had prior experience enrolling health care providers in Medicare. He served as a director and point of contact for several Medicare providers including Heal Rite, Quick Healing, and Total Healing. Defendant **PATRICK OSEMWENGIE** signed Electronic Data Interchange (EDI) agreements for each of these companies committing them to "abide by the laws, regulations, and the program instructions of Medicare." Among the laws, regulations, and program instructions of Medicare included prohibitions on paying kickbacks to Medicare beneficiaries to induce them to sign up for Medicare covered health care services. Medicare also prohibited receiving kickbacks, from other health care providers to refer Medicare beneficiaries.

11.     Despite this prohibition, defendant **PATRICK OSEMWENGIE** paid kickbacks to Medicare beneficiaries to sign up for home health with Ebra, Grace, and other home health companies known and unknown to the grand jury.

12.     Defendant **PATRICK OSEMWENGIE** also accepted kickbacks from coconspirators at home health companies, such as Ebra, Grace, and other home health companies known and unknown to the grand jury, to refer Medicare beneficiaries.

13.     Coconspirators at Ebra and Grace submitted home health claims to Medicare using the Medicare beneficiaries that Defendant **PATRICK OSEMWENGIE** referred as the result of the kickbacks.

## Overt Acts

14.     In furtherance of the conspiracy, and to accomplish its objects and purposes, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a.     In and around August 2015 through April 2016, Defendant **PATRICK OSEMWENGIE** paid Medicare beneficiary W.W., HICN ending 4411A, approximately $250 in kickbacks to induce him to sign up for home health services. The beneficiary's identity was used by Grace to bill for home health services.

b.     On or about September 1, 2015, Defendant **PATRICK OSEMWENGIE** received $4,000 in kickbacks by Grace in exchange for referring Medicare beneficiaries for home health services.

c.     In and around October 2015, Defendant **PATRICK OSEMWENGIE** paid Medicare beneficiary B.E., HICN ending 5334A, approximately $200 in kickbacks to induce him to sign up for home health services. The beneficiary's identity was used by Grace to bill for home health services.

d.     On or about October 29, 2015, Defendant **PATRICK OSEMWENGIE** received $2,000 in kickbacks by Grace in exchange for referring Medicare beneficiaries for home health services.

5

e.      On or about January 12, 2016, Defendant **PATRICK OSEMWENGIE** received $2,000 in kickbacks by Grace in exchange for referring Medicare beneficiaries for home health services.

f.      On or about March 9, 2016, Defendant **PATRICK OSEMWENGIE** received $2,000 in kickbacks by Grace in exchange for referring Medicare beneficiaries for home health services.

g.      On or about May 19, 2016, Defendant **PATRICK OSEMWENGIE** received $2,200 in kickbacks by Grace in exchange for referring Medicare beneficiaries for home health services.

h.      On or about January 27, 2017, Defendant **PATRICK OSEMWENGIE** received $1,500 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

i.      On or about February 9, 2017, Defendant **PATRICK OSEMWENGIE** received $1,000 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

j.      On or about February 17, 2017, Defendant **PATRICK OSEMWENGIE** received $1,000 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

k.      On or about March 3, 2017, Defendant **PATRICK OSEMWENGIE** received $1,300 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

l.      On or about March 20, 2017, Defendant **PATRICK OSEMWENGIE** received $2,250 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

m.      On or about May 4, 2017, Defendant **PATRICK OSEMWENGIE** received $2,000 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

n.      On or about July 10, 2017, Defendant **PATRICK OSEMWENGIE** received $1,200 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

o.      On or about July 13, 2017, Defendant **PATRICK OSEMWENGIE** received $650 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

p.      On or about October 16, 2017, Defendant **PATRICK OSEMWENGIE** received $2,100 in kickbacks by Ebra in exchange for referring Medicare beneficiaries for home health services.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendant that upon conviction of Count One, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture. The United States will seek the imposition of a money judgment against the defendant.  In the event that a condition listed in 21 U.S.C § 853(p) exists, the United States will seek to forfeit any other property of the defendant in substitution up to the amount of the money judgment.

A TRUE BILL

Original Signature on File
_____
FOREPERSON

JENNIFER B. LOWERY
UNITED STATES ATTORNEY – SOUTHERN DISTRICT OF TEXAS

_____
ABDUL FARUKHI
Special Assistant United States Attorney